**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | |
|---|---|
| In re:<br><br>    GRETAG IMAGING, INC.<br><br>    Debtor | Chapter 7<br><br>Case No. 03-40225-HJB |

## TRUSTEE'S MOTION FOR ORDER AUTHORIZING AND APPROVING PRIVATE SALE OF PROPERTY OF THE ESTATE (CHICOPEE, MASS. REAL ESTATE) FREE AND CLEAR OF LIENS AND ENCUMBRANCES

To the HONORABLE HENRY J. BOROFF, U.S. Bankruptcy Judge:

Now comes David W. Ostrander, Chapter 7 Trustee in the above captioned case ("Trustee"), by his counsel, and requests that the Court authorize him to sell the Debtor's real estate located at **2024 Westover Road, Chicopee, Massachusetts** (the "Property") to Foley Property Management, Inc. ("Foley") of Holyoke, Massachusetts for the price of **five hundred forty thousand dollars ($540,000.00),** free and clear of all liens, claims, encumbrances and interests.   In support of this motion, the Trustee respectfully represents as follows:

1.    The Debtor filed a Chapter 7 Voluntary Petition on January 13, 2003 (the "Petition Date").

2.    David W. Ostrander, Esq. was appointed Chapter 7 Trustee and continues in that capacity.

3.    The Meeting Of Creditors took place on February 20, 2003.

4.    On January 22, 2003, the Trustee filed a Motion For Authority To Operate Business for the purpose of conducting an orderly liquidation of the Debtor's assets in order to maximize the return for creditors.

5.    On February 12, 2003, the Court entered an "Agreed Order" on the Trustee's Motion For Authority To Operate Business which had been negotiated between the Trustee and Eastman Kodak Company ("Kodak") which claims to hold a

perfected security interest in the Debtor's assets to secure an obligation owed in the amount of approximately $19 million dollars. Since that date, the Trustee, primarily with the assistance of the former president and chief financial officer of the Debtor, has taken steps to secure and sell assets of the Debtor, among many other administrative tasks.

6.   As of the Petition Date, the Property was being used by the Debtor primarily for storage.

7.   Prior to the Petition Date, Colebrook Realty Services, Inc. ("Colebrook") of Springfield, Massachusetts had been marketing the Property pursuant to a listing agreement between the Debtor and Colebrook dated September 6, 2000.

8.   On April 4, 2003, the Trustee filed a motion to employ Colebrook as broker for the purpose of assisting the Trustee in the marketing and sale of the Property Estate. On April 18, 2003, the Court allowed the motion.

9.   On or about May 23, 2003, the Trustee received an Offer To Purchase the Property from Foley for the amount of $500,000. After subsequent negotiations with Foley on the price for the Property, the Trustee has agreed to accept $540,000 from Foley to purchase the Property. A copy of the Purchase and Sale Agreement for the Property between the Trustee and Foley has been attached hereto as **Exhibit A**. The Trustee has received no other offers for the Property despite the aggressive marketing efforts by Colebrook. Foley has paid a deposit in the amount of $54,000 representing ten percent (10%) of the purchase price.

10.  Upon information and belief, the Property is subject to a mortgage to Kodak as further security for the $19 million debt which Kodak claims it is owed by the Debtor.

11.  Upon information and belief, the City of Chicopee has a statutory lien for real estate taxes and water/sewer charges owed by the Debtor. Upon information and belief, those taxes and charges are current.

12.  The proposed sale is to be made free and clear of liens, interests and encumbrances. Any perfected, enforceable, valid liens shall attach to the

proceeds of the sale according to priorities established under applicable law. Upon information and belief, only Kodak and the City of Chicopee have liens that would attach to the sale proceeds of the Property.

13. In addition to authority to consummate the sale of the Property, the Trustee seeks authority to pay all usual and customary obligations of a seller of commercial real estate including the "transfer tax", recording fees, and any outstanding real estate taxes and water/sewer charges to the City of Chicopee.

14. The Trustee further requests authority to pay and the broker commission due to Colebrook of $27,000 representing five percent (5%) of the sale price as previously approved by the Court.

15. The remaining proceeds from the sale will be retained by the Bankruptcy Estate pending further application to and order from this Court.

**WHEREFORE**, the Trustee requests that the Court enter an Order authorizing him to sell the Property, as set forth herein, and for such other relief that is just and proper.

Dated:  July 31, 2003

David W. Ostrander, Trustee

By:

David W. Ostrander, Esq., BBO #554004
Ostrander Law Office
36 Service Center Road
P.O. Box 1237
Northampton, MA 01061-1237
T: (413) 585-9300  F: (413) 585-9490

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

In re:

    GRETAG IMAGING, INC.          Chapter 7

Debtor                   Case No. 03-40225-HJB

## TRUSTEE'S MOTION FOR ORDER AUTHORIZING AND APPROVING PRIVATE SALE OF PROPERTY OF THE ESTATE (CHICOPEE, MASS. REAL ESTATE) FREE AND CLEAR OF LIENS AND ENCUMBRANCES

## NOTE

**Exhibit A** (Purchase and Sale Agreement) to the above motion consists of **14 pages**. Due to its length it has been omitted from your copy of this pleading. If you wish to receive a copy, however, please contact the Trustee's office to request a copy and it will be provided promptly.

As an alternative, you can access the docket entries for this case via the "pacer" (Public Access To Court Electronic Records) system (https://pacer.mab.uscourts.gov) and access the image of this pleading, including **Exhibit A,** via the internet. The maximum cost for viewing the document is $2.10 for which you will be billed only if you exceed $10 annually. You will have to register with the pacer system (http://pacer.psc.uscourts.gov/) first which takes very little time and is only required once.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

In re:

    GRETAG IMAGING, INC.

    Debtor

Chapter 7

Case No. 03-40225-HJB

### CERTIFICATE OF SERVICE

I, David W. Ostrander, do hereby certify that I served a copy of the Trustee's Motion For Order Authorizing And Approving Private Sale Of Property Of The Estate (Chicopee, Mass. Real Estate) Free And Clear Of Liens And Encumbrances on the following, as well as those parties listed on the attached Service List, by first class mail, postage prepaid, on July 31, 2003:

Office of the U.S. Trustee
600 Main Street, Suite 200
Worcester, MA 01608

George Roumeliotis, Esq.
Counsel To Debtor
Hendel & Collins, P.C.
101 State Street
Springfield, MA 01103

Robert P. Cunningham, Esq.
Robinson Donovan Madden & Barry, P.C.
1500 Main Street, Suite 1600
P.O. Box 15609
Springfield, MA 01115-5609

Daniel McGuire, Esq.
Counsel to Eastman Kodak Co.
Winston & Strawn
35 West Wacker Drive, 42nd Floor
Chicago, IL 60601

John J. Driscoll, Esq.
Counsel To Banknorth
Resnic Beauregard Waite & Driscoll
330 Whitney Avenue, Suite 400
Holyoke, MA 01040

Arnold Greenhut, Esq.
Counsel To Arrow Machine, LLC
Rosen, Greenhut, Catuogno & Low
244 Bridge Street
Springfield, MA 01103

Charles P. Schulman, Esq.
Counsel To Siemens Financial Services, Inc.
Sachnoff & Weaver, Ltd.
30 South Wacker Drive, Suite 2900
Chicago, IL 60606

Mitchell Levine, Esq.
Counsel To Citicorp Vendor Finance, Inc.
Nair & Levin, P.C.
707 Bloomfield Avenue
Bloomfield, CT 06002

Mitchel Bolotin, Vice President
Colebrook Realty Services, Inc.
1441 Main Street
Springfield, MA 01103

Michael J. Moriarty, Esq.
Counsel To Foley Property Management, Inc.
Ducharme Moriarty & Turcotte
245 High Street
Holyoke, MA 01040

City of Chicopee
Tax Collector
City Hall
Chicopee, MA 01020

David W. Ostrander
Ostrander Law Office
P.O. Box 1237
Northampton, MA 01061-1237
T: (413) 585-9300  F: (413) 585-9490

FILED
U.S. BANKRUPTCY COURT
WORCESTER, MASS.
2003 AUG -1  P 1: 15

## GRETAG IMAGING, INC. CHAPTER 7, CASE NO. 03-40225-HJB
## TOP 20 UNSECURED CREDITORS AND TAXING AUTHORITIES

UBS AG
P.O. Box CH-8098
Zurich, Switzerland

GRETAG IMAGING TRADING AG
Althardstrasse 70
Rengensdorf, CH-8105
Switzerland

AMERICAN STORES
15100 North 90th Street
Scotsdale, AZ 85260

GAMA DAN EQUIP
Refrema International
Industrivej 11-13
Soroe, Denmark  dk-4180

PIXEL PHOTOGRAPHICS
East Bentleigh
Victoria, Australia  3165

THOMAS ELECTRONICS, INC.
100 Riverview Drive
Wayne, NJ  07470

AMERICAN EXPRESS COMPANY
Suite 0001
Chicago, IL 60679-0001

MILLRITE MACHINE, INC.
587 Southampton Road
Westfield, MA  01085

FIORE MACHINE, INC.
P.O. Box 51972
140 Michon Street
Indian Orchard, MA  01151

LABTECH GMBH (LTG)
Rontgenstrasse 10
D-40699 Erkrath 2
Erkrath, Germany

IRS Bankruptcy Unit
Insolvency Group, Stop 20800
JFK P.O. Box 9112
Boston, MA 02203

WALGREENS
200 Wilnot Road
Deerfield, IL  60015

GRETAG SAN MARCO
Post Office Box 228
1-33170
Pordenone, Italy

GRETAG SYSTEL
30030 Olmo Di Martellago
Via Dosa 1
Venezia, Italy

AGFA-GEVAERT AG
C/O Douglas R. Gooding, Esq.
Choate, Hall & Stewart
53 Exchange Place
Boston, MA 02109

PEMSTAR, INC.
SDS 12-1061
P.O. Box 86
Minneapolis, MN  55486-1961

KYOCERA AMERICA INC.
8611 Balboa Avenue
San Diego, CA  92123

INCOM, INC.
P.O. Box 3480
Boston, MA  02241-3480

SCHNEIDER FREIGHT USA INC.
145TH Avenue & Hook Creek
Bldg C-1 (G)
Valley Stream, NY  11581

OPTICAL COATING LABORATORY
2789 Northpoint Parkway
ATTN: Kathi Czahar
Santa Rosa, CA 95407

DYNA-FAB
P.O. Box 80
Accord Station
Hingham, MA  02018

Mass. Dept. Of Revenue
Bankruptcy Unit
P. O. Box 9484
Boston, MA 02205-9484

AGREEMENT OF PURCHASE AND SALE

BETWEEN

DAVID W. OSTRANDER, CHAPTER 7 TRUSTEE OF

GRETAG IMAGING, INC.

AND

FOLEY PROPERTY MANAGEMENT, INC.

PROPERTY AT

2024 WESTOVER ROAD
CHICOPEE, MA

DATED: JULY *15*, 2003

330511

A.   Recitals ........................................... 1

B.   Agreement ......................................... 1

1.   Purchase and Sale ................................. 2
2.   Purchase Price .................................... 2
3.   Payment of Purchase Price ......................... 2
4.   Closing ........................................... 2
5.   Condition of Title ................................ 3
6.   Conditions to Closing ............................. 3
7.   Conditions to Seller's Obligations ................ 5
8.   Deliveries by Seller .............................. 5
9.   Deliveries by Buyer ............................... 6
10.  Costs and Expenses ................................ 6
11.  Prorations ........................................ 6
12.  Covenants of Soller ............................... 6
13.  Representations and Warranties .................... 7
14.  Seller's and Buyer's Remedies ..................... 8
15.  Damage or Condemnation Prior to Closing ........... 9
16.  Notices ........................................... 11
17.  Brokers ........................................... 12
18.  Legal Fees ........................................ 12
19.  Reserved .......................................... 13
20.  Miscellaneous ..................................... 15
21.  Confidentiality ................................... 17

LIST OF EXHIBITS:

| EXHIBIT A | PROPERTY DESCRIPTION |
|-----------|----------------------|
| EXHIBIT B | QUITCLAIM DEED |
| EXHIBIT C | FIRPTA CERTIFICATE |

330511

AGREEMENT OF PURCHASE AND SALE

THIS AGREEMENT OF PURCHASE AND SALE ("Agreement") is made
and entered into as of this _15_ day of July, 2003, by and
between DAVID W. OSTRANDER, CHAPTER 7 TRUSTEE OF GRETAG IMAGING,
INC. a Massachusetts corporation(hereafter the "Seller"); and
FOLEY PROPERTY MANAGMENT, INC. a Massachusetts corporation
(hereafter the "Buyer), with respect to the following:

R E C I T A L S :

A.   Seller desires to sell, convey and assign to Buyer all
of Seller's right, title and interest in and to the following:

1.   That certain real property (the "Land") located in
the City of Chicopee, Massachusetts located at 2024 Westover
Road, and the building (the "Building") thereon.  The Land is
described on Exhibit "A" attached hereto;

2.   All rights, privileges, easements and
appurtenances benefiting the Land and/or the Building, including,
without limitation, all easements, rights-of-way and other
appurtenances used or connected with the beneficial use or
enjoyment of the Land and/or the Building; and

3.   Those fixtures running with the Building,
including but not limited to fire alarms, fire alarm system
equipment, smoke detectors, sprinkler system, security system,
installed phone systems, sinks and cabinets.  Not included is the
furniture, partitions and the uninstalled phone systems that are
boxed. The Building (the Land, the Building, Fixtures and
Mezzanine, all such rights or privileges easements and
appurtenances are sometimes collectively hereinafter referred to
as the "Property").

B.   NOW, THEREFORE, in consideration of the mutual
covenants and agreements herein contained and for other good and
valuable consideration, the receipt and sufficiency of which are
hereby acknowledged and intending to be legally bound hereby,
Seller and Buyer agree as follows:

1.   Purchase and Sale.  Seller hereby agrees to sell
the Property to Buyer, and Buyer hereby agrees to purchase the
Property from Seller upon the terms and conditions herein set
forth.

2.   Purchase Price.  The purchase price ("Purchase
Price") for the Property shall be FIVE HUNDRED FORTY THOUSAND and
00/100 ($540,000.00) DOLLARS.

3.   Payment of Purchase Price.  The Purchase Price for
the Property shall be payable by Buyer as follows:

a.   Deposit.  Upon the execution of this
Agreement, Buyer shall deposit or cause to be deposited with the

330511

2

Seller in cash, by a certified or bank cashier's check made payable to Seller or by a confirmed wire transfer of funds, the sum of FIFTY-FOUR THOUSAND AND 00/100 DOLLARS($54,000.00), (the "Deposit"), which shall be paid upon execution of this Agreement. Upon Seller's receipt of the Deposit, Seller shall immediately deposit it in an account of a federally insured bank located in the Commonwealth of Massachusetts. The Deposit shall be fully refundable to Buyer if Buyer is not satisfied as to the matters set forth in Section 6.a. and terminates this Agreement on or before the expiration of the "Contingency Period" (as such term is defined in Section 6.a. hereof). Upon Buyer's satisfaction or waiver of the contingencies set forth in Section 6.a. hereof and the expiration of the Contingency Period, the Deposit shall become non-refundable to Buyer in the event this Agreement is thereafter canceled solely by reason of a default by Buyer hereunder. The Deposit shall be applied to the payment of the Purchase Price upon the "Closing", (as such term is hereafter defined) or refunded to Buyer in the event this Agreement is canceled for any reason other than a default by Buyer.

b.   <u>Closing Funds</u>. Upon the Closing, Buyer shall pay, by a certified or bank cashier's check made payable to Seller, or at Seller's option by a confirmed wire transfer of funds, the balance of the Purchase Price plus or minus Buyer's share of closing costs, prorations and charges payable pursuant to this Agreement.

4.   <u>Closing</u>. For purposes of this Agreement, the Closing shall be the date that the deed, the form of which is attached hereto as <u>Exhibit "B"</u> (the "Deed"), conveying the Property to Buyer, is recorded in the Hampden County Registry of Deeds. Unless extended in writing by Buyer and Seller or unless extended pursuant to the terms of Section 6.a.(1) hereof, the Closing Date shall be on or before thirty (30) days after the expiration of the Contingency Period set forth in Section 6a. of this Agreement. Seller shall deliver possession of the Property to Buyer upon the Closing, subject only to the "Approved Condition of Title" (as defined in Section 5 hereof). Time shall be of the essence to the obligations of the Buyer and Seller herein.

5.   <u>Condition of Title</u>. It shall be a condition to the Closing for Buyer's benefit that title to the Property to be conveyed to Buyer by Seller by the Deed, shall be subject only to the following approved condition of title ("Approved Condition of Title"):

a.   a lien to secure payment of real estate taxes, not delinquent and the installment of special assessments not yet due and payable;

b.   matters affecting the Property created by or with the written consent of Buyer; and

330511

3

c.   exceptions which are disclosed by the Report
described in Section 6(a)(1) hereof and which are approved or
deemed approved by Buyer in accordance with such Section 6(a)(1).

6.   <u>Conditions to Closing</u>.

a.   <u>Conditions to Buyer's Obligations</u>. The
Closing and Buyer's obligation to consummate the transaction
contemplated by this Agreement are subject to the satisfaction of
the following conditions (or Buyer's written waiver thereof, it
being agreed that Buyer may waive in writing any or all of such
conditions) for Buyer's benefit.  Buyer shall have sixty (60)
days from the execution of this Agreement (the "Contingency
Period").  In the event that Buyer shall not be satisfied with
any of the conditions to closing set forth in this Section 6
Buyer may terminate this Agreement by notice to Seller prior to
the end of the Contingency Period, and upon the giving of such
notice Buyer shall be entitled to the return of the Deposit
within three (3) business days following Seller's receipt of
notice of Buyer's termination:

(1)   <u>Title</u>.  Buyer shall have approved the
legal description of the Land and any matters of title.  Buyer
shall have until the expiration of the Contingency Period to give
Seller written notice ("Buyer's Title Notice") of Buyer's
disapproval or conditional approval of the legal description or
any matters of title or of its inability to obtain the title
commitment as aforesaid.  The failure of Buyer to give Buyer's
Title Notice on or before the expiration of the Contingency
Period shall be deemed to constitute Buyer's approval of the
respective matters relating thereto.  If Buyer disapproves or
conditionally approves any of the foregoing matters, Seller may,
within ten (10) business days after its receipt of Buyer's Title
Notice, elect to eliminate or ameliorate to Buyer's reasonable
satisfaction such disapproved or conditionally approved matters.
Within such ten (10) business day period, Seller shall give Buyer
written notice (which shall hereinafter be referred to as
"Seller's Title Notice") of those disapproved or conditionally
approved matters, if any, which Seller covenants and agrees to
either eliminate from the Buyer's title policy as exceptions to
title to the Property or to ameliorate to Buyer's reasonable
satisfaction by the Closing Date as a condition to the Closing
and in such event, the Closing Date shall be extended for thirty
(30) days in order to permit Seller to affect such cure.  If
Seller does not elect in Seller's Title Notice to eliminate or
ameliorate any disapproved or conditionally approved matters as
provided above, or Buyer disapproves, in Buyer's reasonable
discretion, Seller's Title Notice, then Buyer shall have the
right, by notice to Seller within five (5) business days
following Buyer's receipt of Seller's Title Notice, to: (A) waive
its prior disapproval, in which event said disapproved matter(s)
shall be deemed approved, or (B) terminate this Agreement, in
which event the Deposit shall be returned within three (3)
business days to Buyer, and this Agreement, and the rights and
obligations of the parties hereunder shall terminate.  Buyer's

330511

4

failure to elect the options set forth in the preceding sentence shall constitute Buyer's acceptance of Seller's title to the Property.

(2)   Inspections and Studies.   On or before the expiration of the Contingency Period, Buyer shall have the right to approve or disapprove, in Buyer's sole discretion, the results of any and all inspections, investigations, tests and studies, including, without limitation, investigations with regard to zoning, building codes and other governmental regulations, architectural inspections, engineering tests, and soils, seismic and geologic reports, as well as toxic and environmental reports with respect to the Property, inspections of all or any portion of the Improvements (including, without limitation, structural, mechanical and electrical systems, pavement, landscaping and public utilities), and any other physical inspections and/or investigations as Buyer may elect to make or obtain.   The failure of Buyer to disapprove said results on or prior to the expiration of the Contingency Period shall be deemed to constitute Buyer's approval thereof.

During the term of this Agreement, Buyer, its agents, consultants, contractors and subcontractors shall have the right to enter upon the Property to conduct or make any and all inspections and tests (including, without limitation, environmental assessments of the Property).   Buyer hereby agrees to indemnify, defend (with attorneys reasonably satisfactory to Seller) and hold Seller and the Property harmless from and against any and all costs, losses, damages or expenses arising out of or resulting from such entry by Buyer, its agents, consultants, contractors and subcontractors.   Buyer shall make no entry upon the Property unless it has first given Seller notice at least two (2) business days in advance of such intended entry and such entry is made in the company of a representative of Seller.   Buyer shall not interfere with the rights of Seller in making such entry.   Buyer shall not make any subsurface soil examinations unless Buyer has satisfied Seller that such examinations will not adversely affect any building foundations and/or utilities.   Buyer will restore the Property to substantially the same condition which existed prior to such examinations.

(3)   Survey.   Buyer shall have approved a survey of the Land prior to the end of the Contingency Period and if such survey discloses any matters not satisfactory to Buyer, Buyer may terminate this Agreement by notice to Seller given not later than the end of the Contingency Period.

(4)   Use.   Use of the Building by Buyer shall be approved by the Chicopee School Committee prior to the expiration of the Contingency Period.

(5)   Financing.   Buyer shall have obtained a commitment for financing up to eighty percent (80%) of the

330511

5

Purchase Price under conventional terms and conditions, prior to the expiration of the Contingency Period.

7.  <u>Conditions to Seller's Obligations</u>.  For the benefit of Seller, the Closing shall be conditioned upon the timely performance by Buyer of all of the obligations required by the terms of this Agreement to be performed by Buyer (or Seller's waiver thereof, it being agreed that Seller may waive any and all of such conditions).

8.  <u>Deliveries by Seller</u>.  At the Closing, Seller shall deliver to Buyer the following documents and instruments:

a.  <u>Deed</u>.  The Deed conveying the Property to Buyer, duly executed by Seller, acknowledged and in recordable form;

b.  <u>Transferor's Certification of Non-Foreign Status</u>.  Transferor's Certification of Non-Foreign Status in the form attached hereto as <u>Exhibit "C"</u>, duly executed by Seller ("FIRPTA Certificate");

c.  <u>Bankruptcy Court Approval</u>.  Certified copy of the Bankruptcy Court Order approving the sale of the Property to Buyer, free and clear of all liens and encumbrances.

d.  <u>Seller Documentation</u>.  Within ten (10) business days after execution of this Agreement, the Seller shall provide Buyer with copies of any of the following documentation that is in the Seller's possession:

(1) Most current title policy and title exception documents.

(2) Surveys, plans and specifications for the Property.

(3) Environmental Reports for the Property.

(4) Structural and Mechanical Reports for the Property.

e.  <u>Other Instruments</u>.  Such affidavits as may be reasonably required by Buyer's title insurance company to issue its policy of insurance or by Buyer's lender provided no contractual or other liability shall be created thereby.

9.  <u>Deliveries by Buyer</u>.  Buyer shall deliver to Seller the funds which are to be applied towards the payment of the Purchase Price in the amounts and at the times designated in Section 3 hereof (as reduced by the prorations and credits hereinafter provided).

10.  <u>Costs and Expenses</u>.  The cost and expense of any title insurance policies and surveys shall be paid by Buyer.

330511

6

Seller shall pay all transfer taxes payable in connection with
the recordation of the Deed.  Each party shall pay for its own
attorneys' fees.

     11.  <u>Covenants of Seller</u>.  Seller hereby covenants with
Buyer, as follows:

     a.  <u>Maintenance of Insurance</u>.  All insurance
policies (or comparable replacement thereto) carried by Seller
with respect to the Property and in effect as of the date of this
Agreement shall remain continuously in full force and effect from
the date of this Agreement through the Closing Date;

     b.  <u>Maintenance of Property</u>.  From the date of
execution of this Agreement until the Closing Date, Seller hereby
covenants and agrees that Seller will (i) operate and manage the
Property in a manner not less than as currently owned and
managed, (ii) maintain all present services and amenities, (iii)
maintain the Property in good condition, repair and working
order, (iv) maintain the Property in accordance with all
applicable laws, ordinances, rules and regulations affecting the
Property.

330511

12.  <u>Representations and Warranties</u>.

a.  <u>Seller's Representations and Warranties</u>.  In consideration of Buyer entering into this Agreement and as an inducement to Buyer to purchase the Property, Seller makes the following covenants, representations and warranties, but none of which shall survive the Closing:

(1)  <u>Representations Regarding Seller's Authority</u>.  Seller has the legal power, right and authority to enter into this Agreement and the instruments referenced herein, and to consummate the transaction contemplated hereby;

(2)  <u>FIRPTA</u>.  Seller is not a foreign person within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, and Seller will furnish the FIRPTA Certificate to Buyer at the Closing;

(3)  <u>Hazardous Substances</u>.  Seller has received no notice or report alleging the improper existence of Hazardous Substances (as defined below) or any threat of the migration of such materials onto the Property.

As used herein, "Hazardous Substance" is as defined under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Paragraph 9601 et seq., as amended, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. 6901 et seq., as amended, and any and all other "environmental statutes" which regulate the use of hazardous and/or dangerous substances, and the regulations promulgated thereunder and any and all state and local laws, rules and regulations and includes any and all materials or substances, which are defined as "hazardous waste," "extremely hazardous waste", or a "hazardous substance," pursuant to state, federal, or local government law.  "Hazardous Substance" includes but is not restricted to asbestos, polychlorinated biphenyl's ("PCBs"), and petroleum; and

(4)  <u>Zoning and Permitting</u>.  Seller has received no notice alleging any violation of zoning laws and regulations or other municipal laws or regulations.

(5)  <u>Equipment and Furniture</u>.  Seller will cause all equipment, furniture, inventory and supplies to be removed from Property at least five (5) days prior to Closing.

b.  <u>Limitation of Representations and Warranties</u>. THE SELLER HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION OR WARRANTY AS TO ANY MATTER AFFECTING OR RELATING TO THE PROPERTY, including but not limited to the physical condition thereof, and the Buyer acknowledges that no such representation or warranty has been made and agrees to take the Property in "AS IS" condition as of the date of this Agreement.  The Seller shall not be liable or bound in any manner by any statement, representation or information pertaining to the Property which may have been furnished to the Buyer by any of the Seller's employees,

officers, directors, attorneys, agents, servants or other persons, except to the extent that any such representation or information is expressly set forth herein. The Buyer has had a fair and complete opportunity to inspect the Property and has, in fact, inspected the Property and accepts it "AS IS".

c.    <u>Buyer's Representations and Warranties</u>. As a material inducement to Seller's execution of this Agreement, Buyer hereby makes the following representations and warranties to Seller as of the date of this Agreement, which representations and warranties shall also be true and correct as of the date of the Closing:

(1)  Buyer has, and as of the Closing will have, the requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereby, and such actions have been and will be authorized by all requisite actions.

(2)  This Agreement and all agreements, instruments and documents herein provided to be executed by Buyer are, and as of the Closing will be, duly authorized, executed and delivered by and are and will be binding upon Buyer.

13.   <u>Seller's and Buyer's Remedies</u>.

a.    <u>Seller's Remedies</u>.  Provided Buyer has not elected to terminate this Agreement pursuant to any of Buyer's rights to do so contained herein, if after the expiration of the Contingency Period Buyer commits a default under this Agreement and the Closing fails to occur solely by reason of such default, then upon Seller's written notice to Buyer, Buyer shall deliver the Deposit to Seller and Seller shall thereupon be released from its obligations hereunder. Buyer and Seller agree that based upon the circumstances now existing, known and unknown, it would be impractical or extremely difficult to establish Seller's damage by reason of Buyer's default. Accordingly, Buyer and Seller agree that it would be reasonable at such time to award Seller "Liquidated Damages" equal to the amount of the Deposit previously paid by Buyer pursuant to Section 3(a) hereof and such Liquidated Damages shall be deemed Seller's sole remedy at law and in equity for Buyer's default hereunder.

b.    <u>Buyer's Remedies</u>.  In the event that Seller shall default in its obligations under this Agreement Buyer, at its option, may within thirty (30) days following such default either (i) terminate this Agreement by written notice given to Seller and upon the giving of such notice, the Deposit shall be returned to Buyer; or (ii) sue for specific performance but not for consequential damages.

14.   <u>Damage or Condemnation Prior to Closing</u>

a. For purposes of this Section 15, damage to the Property or a Taking shall be deemed to involve a "material"

330511

.

9

portion thereof if the estimated cost of restoration or repair, as estimated by Seller, of such damage or the amount of the condemnation award with respect to such Taking shall exceed Twenty-Five Thousand and no/100 ($25,000.00) Dollars.

      b. In the event that prior to the Closing, the Property, is "materially" damaged, Buyer shall have the right, exercisable by notice to Seller within fifteen (15) days after receipt of notice of such damage or destruction, either (i) to terminate this Agreement, in which event the Deposit shall be returned to Buyer within three (3) business days, and neither party hereto shall have any further rights or obligations hereunder, or (ii) to accept the Property in its then condition and to proceed with the consummation of the transaction contemplated by this Agreement, without an abatement or reduction in the Purchase Price, and to receive an assignment of all of Seller's rights to any insurance proceeds payable by reason of such damage or destruction and Seller shall also pay to Buyer the deductible amount under its property insurance policy.  If Buyer elects to proceed under clause (ii) above, Seller shall not compromise, settle or adjust any claims to such proceeds without Buyer's prior written consent, which consent Buyer may not unreasonably withhold.

      c.  In the event that prior to the Closing there is any non-material damage to the Property, or any part thereof, Seller shall repair or replace such damage prior to the Closing. Notwithstanding the preceding sentence, in the event Seller is unable to repair or replace such damage, Seller shall notify Buyer in writing of such fact (the "Non-Repair Notice") and Buyer shall thereafter have the right, exercisable by notice within fifteen (15) days after receiving the Non-Repair Notice either (i) to terminate this Agreement, in which event the Deposit shall be immediately returned to Buyer, and neither party hereto shall have any further rights or obligations hereunder, or (ii) to accept the Property in its then condition without an abatement or reduction in the Purchase Price and proceed with the transaction contemplated by this Agreement, in which event Buyer may either receive an assignment of all of Seller's rights to any insurance proceeds payable by reason of such damage or destruction and to receive from Seller the amount of the deductible under its property insurance policy; or receive a reduction in the Purchase Price based on the cost to restore the Property as reasonably estimated by Seller.  If Buyer elects to proceed under clause (ii) above, Seller shall not compromise, settle or adjust any claims to such proceeds without Buyer's prior written consent, which consent Buyer may not unreasonably withhold.

      d.  In the event that prior to the Closing, all of the Property is subject to a taking by a public or governmental authority or a deed in lieu thereof is given, (collectively a "Taking"), Buyer shall have the right, exercisable by notice to Seller within fifteen (15) days after receiving notice of such Taking, either (i) to terminate this Agreement, in which event the Deposit shall be immediately

returned to Buyer, and neither party hereto shall have any further rights or obligations hereunder, or (ii) to accept the Property in its then condition, without a reduction in the Purchase Price, and to receive an assignment of all of Seller's rights to any condemnation award or proceeds payable by reason of such taking. If Buyer elects to proceed under clause (ii) above, Seller shall not compromise, settle or adjust any claims to such award without Buyer's prior written consent, which consent Buyer may not unreasonably withhold.

e. In the event that prior to the Closing, any portion of the Property is subject to a Taking which does not result in any loss of access to a public way, parking, easements to benefit the Property or any portion of the Building, Buyer shall accept the Property in its then condition and proceed with the consummation of the transaction contemplated by this Agreement, in which event Buyer shall be entitled to an assignment of all of Seller's rights to any award or proceeds payable in connection with such taking. In the event of any such non-material taking, Seller shall not compromise, settle or adjust any claims to such award without Buyer's prior written consent, which consent Buyer may not unreasonably withhold.

f. Seller agrees to give Buyer prompt notice of any Taking of, proposed Taking of, damage to or destruction of the Property.

15. <u>Notices</u>. All notices or other communications required or permitted hereunder shall be in writing, and may be personally delivered, sent by overnight mail (Federal Express or the like) or sent by registered or certified mail, postage prepaid, return receipt requested, telegraphed, delivered or sent by telex, telecopy, facsimile, fax or cable and shall be deemed received upon the earlier of (i) if personally delivered the date of delivery to the address of the person noticed, (ii) if sent by overnight mail, the business day following its deposit in such overnight mail facility, (iii) if mailed, two (2) business days after the date of posting by the United States post offices (iv) if given by telegraph or cable, when delivered to the telegraph company with charges prepaid, or (v) if given by telex, telecopy, facsimile or fax, when sent. Any notice, request, demand, direction or other communication sent by cable, telex, telecopy, facsimile or fax must be confirmed within forty-eight (48) hours by letter mailed or delivered in accordance with the foregoing.

```
To Buyer:          Foley Property Management, Inc.
                   1913 Northampton Street
                   Holyoke, MA 01040
                   ATTN:  John A. Foley, Jr., President
Phone No.          (413) _____
Fax No.            (413) _____


With a Copy to:          _____
                         _____
```

330511

```
                          _____
                          _____
Phone No.                 (413) _____
Fax No.                   (413) _____


To Seller:                David W. Ostrander, Trustee
                          Ostrander Law Office
                          36 Service Center Road
                          Northampton, MA 01060
Phone No.                 (413) 585-9300
Fax No.                   (413) 585-9490


With a Copy to:           Robert P. Cunningham, Esquire
                          Robinson, Donovan, Madden
                             & Barry, P.C.
                          1500 Main Street
                          Springfield, MA   01115
Phone:                    (413) 732-2301
Fax:                      (413) 785-4658
```

Notice of change of address shall be given by notice in the manner detailed in this Section. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to constitute receipt of the notice, demand, request or communication sent.

   16.  Brokers.  Each of Buyer and Seller represent to the other that they have dealt with no other brokers other than Colebrook Realty Services, Inc., O,R & L Realtors and Olde New England Realty. The party breaching such representation hereby agrees to indemnify, protect, defend (with counsel chosen by the non-breaching party) and hold the non-breaching party free and harmless from and against any and all commissions or other claims such broker may assert in connection with the parties entering into, or consummating the transactions contemplated by, this Agreement. Seller is responsible for the payment of commissions due at the time of Closing.

   17.  Legal Fees.  In the event of the bringing of any action or suit by a party hereto against another party hereunder by reason of any breach of any of the covenants or agreements arising out of this Agreement, then in that event, each party in such action or dispute shall pay its own attorney's fees and neither party shall be entitled to have and recover of and from the other party costs and expenses of suit, including attorneys' fees.

   18.  Reserved.

   19.  Miscellaneous.

330511

12

a.   <u>Required Actions of Buyer and Seller</u>.  Buyer and Seller agree to execute such instruments and documents and to diligently undertake such actions as may be required in order to consummate the purchase and sale herein contemplated and shall use their best efforts to accomplish the Closing in accordance with the provisions hereof.

b.   <u>Computation of Time Periods</u>.  If the date upon which the Contingency Period expires, the Closing Date or any other date or time period provided for in this Agreement is or ends on a Saturday, Sunday or federal, state or legal holiday, then such date shall automatically be extended until 5 p.m. Eastern Daylight Time of the next day which is not a Saturday, Sunday or federal, state or legal holiday.

c.   <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts each of which shall be deemed an original, but all of which, together, shall constitute but one and the same instrument.

d.   <u>Captions</u>.  Any captions to, or headings of, the paragraphs or subparagraphs of this Agreement are solely for the convenience of the parties hereto, are not a part of this Agreement, and shall not be used for the interpretation or determination of the validity of this Agreement or any provision hereof.

e.   <u>No Obligations to Third Parties</u>.  Except as otherwise expressly provided herein, the execution and delivery of this Agreement shall not be deemed to confer any rights upon, nor obligate any of the parties hereto, to any person or entity other than the parties hereto.

f.   <u>Exhibits</u>.  The Exhibits attached hereto are hereby incorporated herein by this reference for all purposes.

g.   <u>Amendment to this Agreement</u>.  The terms of this Agreement may not be modified or amended except by an instrument in writing executed by each of the parties hereto.

h.   <u>Waiver</u>.  The waiver or failure to enforce any provision of this Agreement shall not operate as a waiver of any future breach of any such provision or any other provision hereof.

i.   <u>Applicable Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts without regard to its conflicts of law provisions.

j.   <u>Fees and Other Expenses</u>.  Except as otherwise provided herein, each of the parties hereto shall pay its own fees and expenses in connection with this Agreement.

k.   <u>Entire Agreement</u>.   This Agreement supersedes any prior agreements negotiations and communications, oral or written, and contains the entire agreement between Buyer and Seller as to the subject matter hereof.   No subsequent agreement, representation, or promise made by either party hereto, or by or to any employee, officer, agent or representative of either party hereto shall be of any effect unless it is in writing and executed by the party to be bound thereby.

l.   <u>Successors and Assigns</u>.   Subject to the provisions of Section 18 hereof, this Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto.

m.   <u>Construction</u>.   The parties hereto hereby acknowledge and agree that (i) each party hereto is of equal bargaining strength, (ii) each such party has actively participated in the drafting, preparation and negotiation of this Agreement, (iii) each such party has consulted with such party's own, independent counsel, and such other professional advisors as such party has deemed appropriate, relative to any and all matters contemplated under this Agreement, (iv) each such party and such party's counsel and advisors have reviewed this Agreement, (v) each such party has agreed to enter into this Agreement following such review and the rendering of such advice. and (vi) any rule of construction to the effect that ambiguities are to be resolved against the drafting parties shall not apply in the interpretation of this Agreement, or any portions hereof, or any amendments hereto.

n.   <u>Consideration</u>.   In the event that this Agreement is canceled by reason of Buyer's disapproval of any of the matters which are subject to Buyer's approval under Section 6 hereof, Buyer shall deliver to Seller copies of any and all reports. studies and the like prepared by or for Buyer with respect to the Property; provided, however, that Buyer shall only be obligated to deliver those reports, studies and the like which are freely transferable by Buyer, at no cost or expense to Buyer. Any and all such reports, studies and the like delivered by Buyer to Seller pursuant to this paragraph shall be accepted by Seller (i) "as-is" without any representation or warranty by Buyer, express, implied or statutory, with respect to any matter pertaining thereto, and (ii) subject to the rights of any other party (other than Buyer) with respect thereto.   Seller hereby acknowledges and confirms that such obligation constitutes sufficient consideration for Seller's obligations hereunder.

o.   <u>Survival</u>.   No covenant or obligation set forth in this Agreement shall survive the delivery of the Deed and the payment of the Purchase Price except for those covenants which are expressly intended by their terms to survive the Closing.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

330511

14

"Buyer"

FOLEY PROPERTY MANAGEMENT, INC.

By: _____
     Name: John A. Foley, Jr.
     Its: President


"Seller"

DAVID W. OSTRANDER, CHAPTER 7 TRUSTEE OF
GRETAG IMAGING, INC.

By: _____
     Name: David W. Ostrander

330511

15

EXHIBIT A


LEGAL DESCRIPTION


The land and the buildings thereon located in Chicopee, Hampden
County, Massachusetts as shown as Lot A on a plan entitled ''Plan
of Land in the City of Chicopee, Massachusetts, Hampden County –
Prepared for Gretag Imaging, Inc.'' dated 10/28/02 and recorded
in the Hampden County Registry of Deeds in Plan Book 327, Page
97.

330511

EXHIBIT B


QUITCLAIM DEED

330511

17

## EXHIBIT C

### TRANSFEROR'S CERTIFICATION OF NON-FOREIGN STATUS

To inform _____, a
_____ (the "Transferee") that
withholding of tax under Section 1445 of the Internal Revenue
Code of 1986. as amended ("Code") will not be required upon the
transfer by ~~BERKSHIRE WORCESTER, LLC~~ ("Transferor") of certain
interests in Property to the Transferee, the undersigned hereby
certifies the following on behalf of the Transferor:
*Gretag Imaging, Inc*

1.   The Transferor is not a foreign corporation, foreign
partnership, foreign trust, foreign estate or foreign person (as
those terms are defined in the Code and the Income Tax
Regulations promulgated thereunder); and

2.   The Transferor's U.S. employer or tax (social security)
identification number is ~~06-1652808.~~ *04-278 7508*

The Transferor understands that this Certification may be
disclosed to the Internal Revenue Service by the Transferee and
that any false statement contained herein could be punished by
fine, imprisonment, or both.

Under penalty of perjury I declare that I have examined this
Certification and to the best of my knowledge and belief it is
true, correct and complete.

"TRANSFEROR"        GRETAG IMAGING, INC.

                    By: _____

                    Name: *David W Ostrander*
                    Its: *Chapter 7 Bankruptcy Trustee*

Dated: __*7-15*__, 2003

330511

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | |
|---|---|
| In re:<br><br>    GRETAG IMAGING, INC.<br><br>    Debtor | Chapter 7<br><br>Case No. 03-40225-HJB |

## ORDER ON TRUSTEE'S MOTION FOR ORDER AUTHORIZING AND APPROVING PRIVATE SALE OF PROPERTY OF THE ESTATE (CHICOPEE, MASS. REAL ESTATE) FREE AND CLEAR OF LIENS AND ENCUMBRANCES

Upon consideration of the Trustee's Motion For Order Authorizing And Approving Private Sale Of Property Of The Estate (Chicopee, Mass. Real Estate) Free And Clear Of Liens And Encumbrances to Foley Property Management, Inc. for the price of **five hundred forty thousand dollars ($540,000.00)**, no objections or higher offers having been received, it is hereby **ORDERED** that:

1. The Trustee's Motion For Order Authorizing And Approving Private Sale Of Property Of The Estate (Chicopee, Mass. Real Estate) Free And Clear Of Liens And Encumbrances to Foley Property Management, Inc., or its nominee, is allowed. Any perfected, enforceable, valid liens shall attach to the proceeds of the sale according to priorities established under applicable law.

2. The Trustee is authorized at the closing of the sale to pay all usual and customary obligations of a seller of commercial real estate including the "transfer tax", recording fees, real estate taxes and water/sewer charges that may be due to the City of Chicopee.

3. The Trustee is further authorized to pay the broker commission due to Colebrook Realty Services, Inc. in the amount of $27,000 representing five percent (5%) of the sale price.

Dated:

_____
Honorable Henry J. Boroff
U.S. Bankruptcy Judge
Donohue Federal Building
595 Main Street
Worcester, MA 01608